UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


THOMAS D'HAESE,

    Petitioner,         Hon. Janet T. Neff

v.                Case No. 1:11-CV-201

CARMEN PALMER,

    Respondent.

_____/


## CORRECTED REPORT AND RECOMMENDATION

    This matter is before the Court on D'Hease's petition for writ of habeas corpus. In accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that D'Hease's petition be **denied**.


## BACKGROUND

    As a result of events which occurred in 2006-2007, Petitioner was charged with two counts of First Degree Criminal Sexual Conduct as well as being a fourth habitual offender   (Trial Transcript, January 31, 2008, 3-4, 14, 18-19).  Several individuals testified at Petitioner's jury trial. The relevant portions of their testimony are summarized below.

**Dr. James Henry**

Dr. Henry testified that he was employed as the Director of the Southwest Michigan Children's Trauma Assessment Center.  (Trial Transcript, January 31, 2008, 24).  The doctor was permitted to testify as an expert in the field of child sexual abuse.  (Tr. 24-25).  According to Dr. Henry, "there are patterns [of behavior] that are revealed that are very consistent with children who have been sexually abused."  (Tr. 25-26).  One behavior child sexual abuse victims commonly exhibit is "hyper sexualized behavior," defined as "beyond curious sexual behavior that young children, in their development, might exhibit."  (Tr. 26).  Because young children "have a very difficult time verbalizing when something sexual has happened to them," victims of child sexual abuse commonly engage in "re-enactment" behavior, demonstrating the sexual behavior to which they were subjected "because they don't understand."  (Tr. 26-27).

When a child is sexually abused by a caregiver, the child commonly experiences ambivalence because the caregiver "communicates care as well as abuse."  (Tr. 28-29).  The more intimate the relationship between the abuser and the victim, the more confusing the situation is to the child.  (Tr. 29).  Once the child learns that the abuse "is not something that should happen and this is wrong, then they don't want to tell because they don't want to get [the caregiver] in trouble because they care about them."  (Tr. 29).  Victims of child sexual abuse often experience "traumatic memory."  (Tr. 30).  As a result, when a significant period of time elapses between the abuse and disclosure, it is not uncommon for a child victim of sexual abuse to describe the abuse in inconsistent terms that "doesn't line up every time the same way."  (Tr. 30).

**Sheree Sorensen**

During the 2007-2008 school year, Sorensen was employed as a first grade teacher. (Trial Transcript, January 31, 2008, 36).  One of Sorensen's students that year was J.G.  (Tr. 36). During this time, Sorensen occasionally observed J.G. masturbating "for a very, very brief time." (Tr. 36).  Understanding that kids "that age do experiment," Sorensen did not this behavior was "anything out of the ordinary."  (Tr. 36).

In April 2008, however, Sorensen observed J.G. masturbating for "about 15 minutes." (Tr. 36).  Because Sorensen discerned that "something was different about it this time," she later asked J.G., "is there something that you need me to know or something that you would like me to know." (Tr. 36-37).  J.G. responded by saying, "I'm not supposed to tell anybody." (Tr. 37).  When Sorensen then asked, "what aren't you supposed to tell," J.G. stated that her grandfather ("Pepaw") would "touch her down there" and "kiss her."  (Tr. 37).

**Michelle Smith**

Smith is J.G.'s mother.  (Trial Transcript, January 31, 2008, 41).  Petitioner is her step-father, her mother's husband.  (Tr. 42).  After J.G. reported to Sheree Sorensen that she had been abused by her grandfather, Child Protective Services informed Smith of J.G.'s allegations.  (Tr. 41-42).  Prior to learning of her daughter's allegations, Smith allowed J.G. and her brother, D.G., to stay overnight with Petitioner and his wife "at least once every two weeks" and "sometimes every week."  (Tr. 43).

**J.G.**

J.G. was eight years old.  (Trial Transcript, January 31, 2008, 51).  When J.G. stayed overnight with Petitioner and his wife, Petitioner would take her clothes off and touch her inside her "privates" with his hand.  (Tr. 51-56, 58-59).  Petitioner told J.G. to "keep this a secret."  (Tr. 58).  J.G. reported that she was seven years old when this occurred.  (Tr. 56).

**Jennifer D'Haese**

D'Haese indicated that she had been married to Petitioner for "almost eight years." (Trial Transcript, January 31, 2008, 63).  J.G. and her brother stayed overnight with D'Haese and Petitioner "every other weekend on Friday nights" and "once in awhile in between."  (Tr. 63-64).  During these visits, J.G. slept on the living room floor.  (Tr. 64-65).  During these visits, Petitioner would drink alcohol and smoke marijuana.  (Tr. 71).  When he was drinking, Petitioner "always" made comments of a sexual nature to D'Haese.  (Tr. 74).

**J.C.**

In April 1992, when she was 12 years old, J.C. spent the night with her friend Raquel Zasadinski.  (Trial Transcript, January 31, 2008, 96-97).  At the time, Petitioner was dating Raquel's mother.  (Tr. 97).  J.C. was having difficulty getting to sleep and asked Raquel's mom, Betsy, "if she would get up and stay with [her]."  (Tr. 97).  Betsy declined, but suggested instead that Petitioner stay up with J.C.  (Tr. 97).  J.C. responded that "that was fine, Raquel was already asleep, [and] I just wanted somebody to stay up with me."  (Tr. 97).

Raquel was sleeping on the floor and "her shirt came up and exposed her chest."  (Tr.

4

98).  Petitioner then asked J.C. if her chest "looked like that."  (Tr. 98).  J.C. told Petitioner that she "didn't know," but thought "maybe [hers] were bigger" to which Petitioner responded, "let me be the judge of that."  (Tr. 98).  J.C. told Petitioner, "no," but Petitioner kept "motioning [to J.C.] that he wanted [her] to lift [her] shirt up."  (Tr. 98).  Shortly thereafter, Petitioner "nudged" J.C. with his foot.  (Tr. 98).  When J.C. looked at Petitioner, she saw that "he had his penis in his hand and was masturbating and telling [J.C.], watch me, watch."  (Tr. 98).  Petitioner eventually "ejaculated and got up and took care of his mess and went to bed."  (Tr. 98).  Petitioner told J.C. that "this would be [their] little secret."  (Tr. 99).

**S.P.**

Approximately five years previously, S.P. was friends with Jennifer D'Haese's daughter, Charlene.  (Trial Transcript, January 31, 2008, 101-02).  S.P. was 13 years old at the time.  (Tr. 102).  S.P. and Charlene would "stay over at each other's houses and do [their] homework together."  (Tr. 102).  On one occasion, when S.P. was visiting Charlene, Petitioner began touching S.P.'s chest and vaginal area.  (Tr. 103).  Petitioner later began performing oral sex on S.P.  (Tr. 103-04).  Petitioner and S.P. later began having sexual intercourse.  (Tr. 104).  S.P. resisted Petitioner's advances, but Petitioner told S.P., "don't tell nobody or I'll pretty much ruin your life."  (Tr. 104-05).

**Michael Mohney**

Mohney is employed as a Detective Sergeant with the Three Rivers Police Department.  (Trial Transcript, January 31, 2008, 112).  Mohney was assigned to investigate J.G.'s

allegations against Petitioner.  (Tr. 112).  As part of his investigation, Mohney interviewed Petitioner.  (Tr. 112-13).  Petitioner confirmed that J.G. and her brother regularly stayed overnight at his house.  (Tr. 113-14).  Petitioner denied J.G.'s allegations and "had no idea where she would come up with these things."  (Tr. 113).  Petitioner, however, did not believe that J.G. had been coerced into making the allegations in question and, moreover, "didn't believe she was lying."  (Tr. 113).  Petitioner also acknowledged that he consumed "on average. . .a couple 22 ounce beers a night" and smoked marijuana "almost daily."  (Tr. 114).  When Petitioner was given the option to view a videotape of J.G. making her allegations to the police, Petitioner "refused and stated he had no reason to watch that because he didn't doubt what she was saying was true."  (Tr. 114).


**D.G.**

D.G. testified on Petitioner's behalf.  D.G. indicated that he and his sister, J.G., stayed overnight at Petitioner's house on Friday nights.  (Trial Transcript, February 1, 2008, 8-9).  D.G. never saw Petitioner "give a bad touch to" J.G.  (Tr. 9).


**John Gingerich**

Gingerich testified on Petitioner's behalf.  Gingerich is J.G. and D.G.'s father.  (Trial Transcript, February 1, 2008, 11-12).  Gingerich testified that "several" years previously he observed J.G. "basically trying to hump" one of her stuffed animals.  (Tr. 12-13).  According to Gingerich this behavior occurred before J.G. began spending nights at Petitioner's residence.  (Tr. 13-14).

**Linda Perkins**

Perkins testified on Petitioner's behalf.  Perkins is Petitioner's sister.  (Trial Transcript, February 1, 2008, 22-23).  In 2004, Perkins worked as a babysitter for J.G. and D.G.  (Tr. 20-21).  During this time, Perkins "frequently" observed J.G. "doing sexual motions towards" one of her stuffed animals.  (Tr. 21-22).  When asked about her behavior, J.G. responded that "she sees. . .momma and Matt do it."  (Tr. 22).

**Charlene Fowler**

Fowler testified on Petitioner's behalf.  Fowler is Jennifer D'Haese's daughter.  (Trial Transcript, February 1, 2008, 24).  Fowler was often present at Petitioner's residence when J.G. and D.G. visited.  (Tr. 25).  On these occasions, she never observed anything "inappropriate" between Petitioner and J.G.  (Tr. 26).  Fowler acknowledged, however, that when she was younger Petitioner "would get drunk" and mistake her for her mother and make sexual comments to her.  (Tr. 26-27). Fowler also acknowledged that on at least one occasion she woke up and discovered Petitioner in bed with her.  (Tr. 26).

**Michael Mohney**

After Petitioner rested, the prosecution recalled Detective Sergeant Mohney to testify. Mahoney indicated that during his investigation neither Petitioner nor Jennifer D'Haese ever mentioned the alleged incidents in which J.G. was humping her stuffed animal.  (Trial Transcript, February 1, 2008, 28).

Following the presentation of evidence, the jury found Petitioner guilty of two counts of First Degree Criminal Sexual Conduct. (Trial Transcript, February 1, 2008, 61). As an habitual offender, Petitioner was sentenced to serve 40-60 years in prison. (Sentencing Transcript, March 14, 2008, 36). Petitioner appealed his conviction to the Michigan Court of Appeals asserting the following claims:

I.   MCL 768.27b[1] conflicts with MRE 404(b) and intrudes upon the Michigan Supreme Court's constitutional power to establish, modify, amend and simplify the practice and procedure in all courts of this state.

II.  The prosecutor's summation misconduct denied Mr. Dhaese a fair trial. Counsel was ineffective for not objecting.

III. The court below made three guidelines-scoring errors that require resentencing.

The Michigan Court of Appeals affirmed Petitioner's conviction. *People v. Dhaese*, 2009 WL 3163142 (Mich. Ct. App., Oct. 1, 2009). Asserting the same issues, Petitioner subsequently moved in the Michigan Supreme Court for leave to appeal. The court denied Petitioner's request, stating that "we are not persuaded that the questions presented should be reviewed by this Court." *People v. Dhaese*, 778 N.W.2d 251 (Mich. 2010). On March 1, 2011, Petitioner initiated the present action in which he asserts the three claims above.

## STANDARD OF REVIEW

D'Hease's petition is subject to the provisions of the Antiterrorism and Effective

---

[1] While Petitioner references Mich. Comp. Laws § 768.27b in his statement of issues raised (both in this Court and the state courts below), it is clear from Petitioner's substantive argument, as well as the decision by the Michigan Court of Appeals, that Petitioner's is, in fact, invoking in this argument Mich. Comp. Laws § 768.27a.

Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254.  The AEDPA amended the

substantive standards for granting habeas relief under the following provisions:

> (d)  An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court
> shall not be granted with respect to any claim that was
> adjudicated on the merits in State court proceedings unless
> the adjudication of the claim —
>
> (1)  resulted in a decision that was contrary to, or involved
> an unreasonable application of, clearly established
> Federal law, as determined by the Supreme Court of
> the United States, or
>
> (2)  resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to

"prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the

extent possible under law."  *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law

when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

question of law" or "if the state court confronts facts that are materially indistinguishable from a

relevant Supreme Court precedent and arrives at an opposite result."  *Ayers v. Hudson*, 623 F.3d 301,

307 (6th Cir. 2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).

Prior to *Williams*, the Sixth Circuit interpreted the "unreasonable application" clause

of § 2254(d)(1) as precluding habeas relief unless the state court's decision was "so clearly incorrect

that it would not be debatable among reasonable jurists."  *Gordon v. Kelly*, 2000 WL 145144 at *4

(6th Cir., February 1, 2000); *see also*, *Blanton v. Elo*, 186 F.3d 712, 714-15 (6th Cir. 1999).  The

*Williams* Court rejected this standard, indicating that it improperly transformed the "unreasonable application" examination into a subjective inquiry turning on whether "at least one of the Nation's jurists has applied the relevant federal law in the same manner" as did the state court. *Williams*, 529 U.S. at 409.

In articulating the proper standard, the Court held that a writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411. Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12. Accordingly, a state court unreasonably applies clearly established federal law if it "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case" or if it "either unreasonably extends or unreasonably refuses to extend a legal principle from the Supreme Court precedent to a new context." *Ayers*, 623 F.3d at 307. Furthermore, review under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, - - - S.Ct. - - -, 2011 WL 1225705 at *8 (Apr. 4, 2011).

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the "factual determination by [the] state courts are presumed correct absent clear and convincing evidence to the contrary." *Ayers*, 623 F.3d at 308. Accordingly, a decision "adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."

While this standard is "demanding" it is "not insatiable."  *Id.*

         For a writ to issue pursuant to § 2254(d)(1), the Court must find a violation of clearly established federal law "as set forth by the Supreme Court at the time the state court rendered its decision."  *Stewart v. Irwin*, 503 F.3d 488, 493 (6th Cir. 2007).  This definition of "clearly established federal law" includes "only the holdings of the Supreme Court, rather than its dicta." *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  Nevertheless, "the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart*, 503 F.3d at 493.

         As previously noted, § 2254(d) provides that habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits" unless the petitioner can satisfy the requirements of either § 2254(d)(1) or § 2254(d)(2).  This provision, however, "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"  *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011).  Instead, when a federal claim has been presented to a state court and the state court has denied relief, "it may be presumed that the state court adjudicated the claim on the merits."  *Id.* at 784-85.  Where such is the case, the Court must apply the deferential standard of review articulated above, rather than some other less deferential standard.

         The presumption that the state court "adjudicated [a] claim on the merits" may be overcome only "when there is reason to think some other explanation for the state court's decision is more likely."  *Id.*  If this presumption is overcome, however, the Court reviews the matter de novo.  *See Wiggins v. Smith*, 539 U.S. 510, 533-35 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *see also, Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir.

2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

## ANALYSIS

**I.      State Law Issues**

   The federal courts can only consider habeas claims alleging violations of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a).  As discussed below, two of the claims asserted in this matter allege violations of Michigan law and, therefore, cannot serve as a basis for granting habeas relief.

    **A.      Conflict between Michigan Statutes and Michigan Rules of Evidence**

   In 2005, the Michigan legislature enacted Mich. Comp. Laws § 768.27a which provides, in relevant, part that "in a criminal case in which the defendant is accused of committing a listed offense [e.g., criminal sexual conduct] against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant."  Michigan Rule of Evidence 404(b) provides, in relevant, as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

   There arguably exists a conflict between § 768.27a and Rule 404(b).  Accordingly,

in *People v. Watkins*, the Michigan Court of Appeals considered "whether MCL 768.27a conflicts with MRE 404(b) and, if it does, whether the statute prevails over the court rule." *People v. Watkins*, 745 N.W.2d 149, 150 (Mich. Ct. App. 2007). Finding that Rule 404(b) could apply to exclude certain evidence which § 768.27a plainly permits, the court concluded that the provisions in question were in conflict. *Id.* at 153. The court then noted that where a court rule conflicts with a statute, the "court rule governs when the matter pertains to practice and procedure," but where the statute in question concerns an "issue of substantive law, the statute prevails." *Watkins*, 745 N.W.2d at 152-53. Finding that § 768.27a "is a substantive rule of evidence deeply rooted in weighty policy considerations," the court concluded that the statute prevailed over the court rule. *Id.* at 153.

At trial, Petitioner objected to the admission of testimony from J.C. and S.P. (Trial Transcript, January 31, 2008, 78-83). The trial judge allowed the testimony in question on the grounds that such was permitted by Mich. Comp. Laws § 768.27a. (Tr. 83-92). In his appeal to the Michigan Court of Appeals, Petitioner acknowledged that the trial judge, relying on the aforementioned *Watkins* decision, properly admitted the evidence in question. Petitioner's argument to the Michigan Court of Appeals was simply that the *Watkins* court was mistaken and that Rule 404(b) should instead trump § 768.27a based on principles of Michigan law. This is the very same argument that Petitioner advanced before the Michigan Supreme Court and now advances in this Court. Petitioner's claim, therefore, rests upon a perceived violation of Michigan law. As previously noted, however, habeas relief is only available for violations of the Constitution, laws, or treaties of the United States. Because Petitioner's claim rests upon a perceived violation of state law, relief is available only if the alleged error deprived Petitioner of "fundamental fairness in the trial process." *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993).

13

Generally, errors by a state court on matters involving the admission or exclusion of evidence are not cognizable in a federal habeas proceeding. *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Habeas relief is warranted, however, if the error "had substantial and injurious effect or influence in determining the jury's verdict." *Clemmons v. Sowders*, 34 F.3d 352, 357 (6th Cir. 1994) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). This requires Petitioner to demonstrate "actual prejudice" resulting from a constitutional error. *Clemmons*, 34 F.3d at 357.

To establish constitutional error, Petitioner cannot simply argue that the trial court's evidentiary ruling was improper, as "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). Rather, Petitioner must establish that his conviction violated the Constitution, laws, or treaties of the United States. *Id.* In this respect, it is recognized that "[w]hen an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief." *Bugh*, 329 F.3d at 512; *see also*, *Norris v. Schotten*, 146 F.3d 314, 328-29 (6th Cir. 1998) (citing *Estelle*, 502 U.S. at 67-68).

Fundamental fairness does not, however, "require a perfect trial," *Clemmons*, 34 F.3d at 358, and courts have defined those violations which violate fundamental fairness "very narrowly." *Bugh*, 329 F.3d at 512. State court evidentiary rulings do not offend due process unless they violate "some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Id.* (citations omitted). Whether the admission of evidence constitutes a denial of fundamental fairness "turns upon whether the evidence is material in the sense of a crucial, critical highly significant factor." *Ege v. Yukins*, 485 F.3d 364, 375 (6th. Cir. 2007).

The Sixth Circuit has found that the improper introduction of evidence violated a criminal defendant's right to a fair trial where the challenged evidence was the only direct evidence

14

linking the defendant to the crime.  *See Ege*, 485 F.3d at 374-78.  However, where there exists sufficient other  evidence of guilt and the challenged evidence is only "peripheral to the case against" the defendant, the Sixth Circuit has found no due process violation.  *Collier v. Lafler*, 2011 WL 1211465 at *3 (6th Cir., Mar. 30, 2011).  The testimony by J.C. and S.P. did not constitute direct evidence on the question whether Petitioner sexually assaulted J.G., but instead was merely peripheral to such.  The Court further notes that the United States Supreme Court has never held that a state violates due process by permitting propensity evidence in the form of other bad acts evidence. *Bey v. Bagley*, 500 F.3d 514, 520 (6th Cir. 2007).

In sum, Petitioner cannot demonstrate that admission of the evidence in question violated his right to due process or his right to a fair trial.  Accordingly, this claim raises no issue on which habeas relief may be granted.

B.       Scoring of the Michigan Sentencing Guidelines

Petitioner also argues that the trial court "made three guidelines-scoring errors that require resentencing."  Claims that the trial court incorrectly scored the relevant offense variables are not cognizable in federal habeas proceedings.  *See* 28 U.S.C. § 2254(a) (the federal courts can only consider habeas claims alleging "violation of the Constitution, laws, or treaties of the United States"); *Coleman v. Curtin*, 425 Fed. Appx. 483, 484-85 (6th Cir., June 6, 2011) (claims that a state court improperly calculated the relevant offense variables is not cognizable in a federal habeas proceeding).  Accordingly, this claim raises no issue on which habeas relief may be granted.

II.           **Prosecutorial Misconduct**

Petitioner next asserts that the prosecutor, during his closing argument, made unfairly prejudicial comments that deprived him of the right to a fair trial.  The comments in question are as follows:

> Heard from Detective Mohney.  Detective Mohney interviewed Thomas Dhaese, and what did Thomas Dhaese say?  "I have no reason to discredit [J.G.].  I'm standing by what she says.  I can't think of any reason why she would lie."
>
> Ladies and gentlemen, I stand by what [J.G.] says.  Detective Mohney stands by what [J.G.] says.  [J.G.'s] mother, [J.G.'s] teacher all stand by what [J.G.] says.  The defendant stands by what [J.G.] says.  I come here this morning and ask all of you to stand by what [J.G.] says because she's absolutely telling the truth.

(Trial Transcript, February 1, 2008, 36).

When a petitioner makes a claim of prosecutorial misconduct, "the touchstone of due process analysis...is the fairness of the trial, not the culpability of the prosecutor." *Cockream v. Jones*, 382 Fed. Appx. 479, 484 (6th Cir., June 29, 2010) (quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982)).  The issue is whether the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Gillard v. Mitchell*, 445 F.3d 883, 897 (6th Cir. 2006) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)).  Thus, even if the challenged comments were improper, habeas relief is available only where the comments were "so flagrant as to render the entire trial fundamentally unfair." *Gillard*, 445 F.3d at 897.

When assessing whether alleged prosecutorial misconduct warrants relief, the Court undertakes a two part analysis.  The Court must first determine whether "the prosecutor's conduct and remarks were improper." *Girts v. Yanai*, 501 F.3d 743, 758-59 (6th Cir. 2007).  If such is the case, the Court must then determine "whether the impropriety was flagrant and thus warrants

reversal." *Id.* at 759.  When assessing whether an improper comment resulted in a denial of the right to a fair trial, the Court considers the following factors: (1) the likelihood that the comments mislead the jury or prejudiced the accused; (2) whether the comments were extensive or isolated; (3) whether the comments were deliberately or accidentally presented to the jury; and (4) whether the evidence against the accused was substantial.  *Id.*

Petitioner argues that the prosecutor's conduct violated his rights in three distinct ways: (1) the prosecutor was vouching for J.G.'s credibility; (2) the prosecutor enlisted Detective Mohney, Sheree Sorensen, and Michelle Smith to vouch for J.G.'s credibility; and (3) the prosecutor argued facts not in evidence, namely that Mohney, Sorensen, and Smith "all stood by what [J.G.] says."

Improper vouching occurs "when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the government behind that witness."  *Wogenstahl v. Mitchell*, 668 F.3d 307, 328 (6th Cir. 2012). Improper vouching generally occurs when the prosecutor makes "comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony."  *Id.*  However, a prosecutor is permitted to "argu[e] reasonable inferences from the evidence."  *Landis v. Galarneau*, 2012 WL 2044406 at *4 (6th Cir., June 7, 2012) (quoting *United States v. Collins*, 78 F.3d 1021, 1039-1040 (6th Cir. 1996)).  The prosecutor is likewise permitted to "argue that the jury should arrive at a particular conclusion based upon the record evidence."  *Wogenstahl*, 668 F.3d at 329; *see also*, *United States v. Reliford*, 58 F.3d 247, 250-51 (6th Cir. 1995) (so long as he does not improperly vouch for a witness, it is proper for the prosecutor to review the evidence presented and comment on the strength of the State's case).

17

Finally, where there is conflicting testimony, "it may be reasonable to infer, and accordingly to argue, that one of the two sides is lying." *Collins*, 78 F.3d at 1039-1040.

        A.      J.G. is "absolutely telling the truth."

        The prosecutor's importuning to the jury that it should "stand by what [J.G.] says because she's absolutely telling the truth," is the most troublesome aspect of the comments in question.  While the prosecutor may not have been suggesting that he possessed any special knowledge regarding J.G.'s credibility, he certainly appeared to be expressing a personal belief in her credibility.  At the conclusion of the prosecutor's closing argument, however, the trial judge provided a curative instruction to the jury, instructing them that "you are the triers of fact and you'll decide which witnesses to believe or not believe."  (Trial Transcript, February 1, 2008, 38-39).  When giving the jury its final instructions, the trial judge again reminded the jury that it was their duty to "decide what the facts of this case are" and "which witnesses you believe and how important you think their testimony is."  (Tr. 46-49).  Thus, while the comments in question were deliberate, and the evidence against Petitioner was less than overwhelming, the comments were isolated and given the judge's curative instructions, it seems unlikely that the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process."

        The Michigan Court of Appeals rejected this particular claim, finding as follows:

> A review of the challenged comment in context reveals that the prosecutor never suggested that he had special knowledge as to the victim's truthfulness.  However, the prosecution's comment was ill advised where it could be viewed as expressing a personal opinion about whether the victim was telling the truth.  Regardless, reversal is unwarranted because the trial court gave a curative instruction immediately following the prosecutor's closing argument and again reminded the jury that it was the sole judge of witness credibility

18

> during its final instructions before the jury began its deliberation.
> "Curative instructions are sufficient to cure the prejudicial effect of
> most inappropriate prosecutorial statements and jurors are presumed
> to follow their instructions."

*Dhaese*, 2009 WL 3163142 at *1 (citations omitted).

The decision by the Michigan Court of Appeals is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue on which habeas relief may be granted.

> B.     Mohney, Sorensen, and Smith "all stand by what [J.G.] says."

As noted above, the prosecutor also stated "Detective Mohney stands by what [J.G.] says. [J.G.'s] mother, [J.G.'s] teacher all stand by what [J.G.] says." Petitioner asserts that this statement violated his right to a fair trial in two ways. Petitioner argues that the prosecutor was improperly arguing facts not in evidence and, moreover, was enlisting other witnesses to improperly vouch for the credibility of another witness.

In the Court's estimation, the prosecutor was not asserting that these particular witnesses literally stated that they were "standing by" the victim's comments. Instead, the prosecutor appears to have merely argued that the testimony of these witnesses was consistent with or supported the victim's testimony, a permissible inference which the prosecutor was free to argue. Thus, the prosecutor was neither arguing facts not in evidence nor was he improperly attempting to argue that the witnesses in question were vouching for the victim's credibility. The Court discerns nothing improper about this comment, but even if the comment was improper it was not so egregious as to render Petitioner's trial unfair.

19

The Michigan Court of Appeals rejected these particular claims, finding as follows:

> Defendant also contends that the prosecutor engaged in misconduct by enlisting other witnesses to comment on the credibility of the victim.  Defendant cites *People v. Buckey,* 424 Mich. 1, 17, 378 N.W.2d 432 (1985), which asserts that witnesses are not to comment on or be asked about the credibility of other witnesses to support his argument.  However, his reliance on this case is misplaced.  While it is true that "it [is] improper for the prosecutor to ask [a witness] to comment on the credibility of prosecution witnesses," that did not occur here.  Thus, defendant has failed to establish factually that the prosecution engaged in misconduct in this manner.
>
> Defendant next asserts that the prosecutor improperly argued facts not in evidence during closing argument, by suggesting that three witnesses "stood by" the victim's allegations.  We disagree.  "Prosecutors cannot make statements of fact unsupported by the evidence, but remain free to argue the evidence and all reasonable inferences arising from it as they relate to the theory of the case.  The prosecutor's comments must be considered as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial."  Our review of the record reveals that the prosecution permissibly stated a reasonable inference that the testimony of the three witnesses supported the victim's allegations.  The prosecution was not limited to the blandest language possible, but rather had "wide latitude" to argue a reasonable and common-sense inference from the testimony presented at trial.  Further, we recognize that the trial court appropriately issued a curative jury instruction to extinguish any possible prejudice.

*Dhaese*, 2009 WL 3163142 at *2 (citations omitted).

The decision by the Michigan Court of Appeals is neither contrary to, nor involves an unreasonable application of, clearly established federal law.  Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented.  Accordingly, this claim raises no issue on which habeas relief may be granted.

III.            **Ineffective Assistance of Counsel**

Finally, Petitioner asserts that his right to the effective assistance of trial counsel was denied by his counsel's failure to contemporaneously object to the comments, discussed in the preceding section, that the prosecutor made in his closing argument.

To establish ineffective assistance of counsel, Petitioner must show both deficient performance by his counsel and prejudice resulting therefrom. *See Premo v. Moore*, 131 S.Ct. 733, 739 (2011). To establish deficient performance, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Premo*, 131 S.Ct. at 739 (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). A court considering a claim of ineffective assistance must apply a "strong presumption that counsel's representation was within the 'wide range' of reasonable professional assistance." *Premo*, 131 S.Ct. at 739 (quoting *Strickland*, 466 U.S. at 689). Petitioner's burden is to show that "counsel made errors so serious that [she] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Premo*, 131 S.Ct. at 739 (quoting *Strickland*, 466 U.S. at 687).

Petitioner must further establish that he suffered prejudice as a result of his attorney's allegedly deficient performance. Prejudice, in this context, has been defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Premo*, 131 S.Ct. at 739 (quoting *Padilla v. Kentucky*, 130 S.Ct. 1473, 1485 (2010)); *see also*, *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008). The issue is whether counsel's representation "amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Premo*, 131 S.Ct. at 739 (quoting *Strickland*, 466 U.S. at 690). This is a heavy burden for Petitioner to meet, because he must

21

establish that his counsel's performance was "so manifestly ineffective that defeat was snatched

from the hands of probable victory." *Jacobs v. Mohr*, 265 F.3d 407, 418 (6th Cir. 2001).

As the Supreme Court has made clear, even when reviewing an ineffective assistance

of counsel claim *de novo*, "the standard for judging counsel's representation is a most deferential

one." *Premo*, 131 S.Ct. at 740. Likewise, the standard by which petitions for habeas relief are

judged is "highly deferential." Thus, when reviewing, in the context of a habeas petition, whether

a state court unreasonably applied the *Strickland* standard, review is "doubly" deferential. *Id.*

(citations omitted). As the Supreme Court recently concluded:

> The *Strickland* standard is a general one, so the range of reasonable
> applications is substantial. Federal habeas courts must guard against
> the danger of equating reasonableness under *Strickland* with
> unreasonableness under § 2254(d). When § 2254(d) applies, the
> question is not whether counsel's actions were reasonable. The
> question is whether there is any reasonable argument that counsel
> satisfied *Strickland*'s deferential standard.

*Id.* (internal citations omitted).

As discussed above, the comments in question did not deprive Petitioner of a fair

trial. Moreover, the trial judge immediately thereafter cautioned the jury that it was the trier of fact

and that it was their obligation to decide the facts of the case. Even if counsel had objected to the

prosecutor's comments, it is unlikely that the trial judge would have done anything more in response

than he did. Moreover, the trial judge again reminded the jury in his closing instructions that it was

exclusively their role to determine the facts of the case. In sum, even if counsel was deficient for

failing to object, Petitioner cannot establish that he was prejudiced by counsel's failure.

The Michigan Court of Appeals rejected these particular claims, finding as follows:

> Defendant argues additionally that he was denied the effective
> assistance of counsel because his trial counsel failed to object to the

above-discussed instances of prosecutorial misconduct.  To prevail
on a claim of ineffective assistance of counsel, defendant must prove
two components: 1) deficient performance, and 2) prejudice.
"Because defendant bears the burden of demonstrating both deficient
performance and prejudice, the defendant necessarily bears the
burden of establishing the factual predicate for his claim." Here,
however, the record does not support any meritorious contention of
prosecutorial misconduct, particularly in light of the curative
instructions provided, and consequently, defendant has failed to
establish the factual predicate for his claim that his counsel was
ineffective for failing to object to this alleged misconduct.

*Dhaese*, 2009 WL 3163142 at *2 (citations omitted).

The decision by the Michigan Court of Appeals is neither contrary to, nor involves

an unreasonable application of, clearly established federal law.  Furthermore, this decision was not

based on an unreasonable determination of the facts in light of the evidence presented.  Accordingly,

this claim raises no issue on which habeas relief may be granted.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that Petitioner is not

being confined in violation of the laws, Constitution, or treaties of the United States.  Accordingly,

the undersigned recommends that D'Haese's petition for writ of habeas corpus be **denied**.  The

undersigned further recommends that a certificate of appealability be denied.  *See Slack v.
McDaniel*, 529 U.S. 473 (2000).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of

Court within 14 days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file

objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date:  November 19, 2012                          /s/ Ellen S. Carmody
                                                  ELLEN S. CARMODY
                                                  United States Magistrate Judge

24